IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYRA BETTENCOURT<br><br>  Plaintiff,<br><br>  vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>  Defendant.<br>_____/ | CASE NO. CV-F-04-6633 AWI LJO<br><br>**FINDINGS AND RECOMMENDATIONS RE MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 17) |

Plaintiff Myra Bettencourt ("claimant") seeks judicial review of an administrative decision denying her claim for Disability Insurance Benefits under the Social Security Act, Title II ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed her complaint on November 3, 2004 and her opening brief on August 2, 2005. The Commissioner filed her opposition to the appeal on October 11, 2005. Claimant did not file a reply brief.

## BACKGROUND

### Administrative Proceedings

Claimant filed an application for Disability Insurance Benefits under the Social Security Act on February 28, 2002. (Administrative Record "AR" 86-88.) She alleges a disability onset of October 3, 2001 due to hepatic dysfunction, ventral hernia, low energy level. (AR 103.) Claimant's application

for benefits was denied and denied upon reconsideration. (AR 67-70, 72-76.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on December 3, 2004. (AR 19-24.) The Appeals Council denied review. (AR 5-7.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

### Claimant's Background and Work Experience

Claimant was born on November 17, 1939. (AR 30.) She completed the twelfth grade and six months of business college. (AR 31.) Her past relevant work is as a secretary. (AR 32.)

### Medical History

The pertinent medical history is summarized as follows.

Claimant underwent surgery related to jaundice in late 2000. (AR 267-271.) There was no malignancy. (AR 221.) In February 2001, she was getting along relatively well although fatigued. (AR 267.) Claimant was again hospitalized for abdominal pain in March 2001. (AR 140-144.) Objective testing revealed liver atrophy and dilation of the bile ducts. (AR 148.) She underwent drainage surgery with catheter placement. (AR 221.) Claimant was again hospitalized in June 2001 with complaints of fatigue. (AR 221.) She underwent further surgery and was discharged on the seventh day following surgery "in good condition." (AR 222.)

Claimant saw treating physician Richard Plotzker, M.D. for follow ups after her surgeries. (AR 255-259.) On August 19, 2002, claimant reported depression but Dr. Plotzker reported that she "seems to be doing relatively stable." On January 22, 2002, Dr. Plotzker opined that claimant should be considered for total disability due to diminished hepatic function and a ventral hernia. (AR 262.)

Claimant saw Tushar Modi, M.D., an internist, following her surgeries. (See e.g., AR 287, 296.) On August 23, 2002, Dr. Modi opined that claimant was unable to lift because she has anxiety, stress and depression. (AR 273.) Dr. Modi also stated that claimant could do some sedentary work, which is lifting no more than 10 pounds frequently or occasionally and that she stand or walk 2-4 hours in and 8-hour day. (AR 273.)

State agency physician George Jansen, M.D. completed the Physical Residual Functional Capacity Assessment form on September 6, 2002. (AR 307-314.) Dr. Jansen opined that claimant could lift 10 pounds occasionally and less than 10 pounds frequently and stand/walk at least 2 hours in an 8-

hour day and sit 6 hours in an 8-hour day. (AR 308.)

On October 18, 2002, claimant presented for a consultative psychiatric evaluation by Charles House, Ph.D. (AR 325.) Claimant complained of depression, fatigue, inability to concentrate and pain associated with her hernia. (AR 325.) On examination, Dr. House found claimant with above average range of intellectual level, without disorder, memory intact, and good concentration and attention. (AR 329.) Dr. House diagnosed adjustment disorder, mixed emotional feature, anxious and depressed mood, chronic and enduring circumstances with medical stressors. He assessed a GAF of 65-70. (AR 330.) Dr. House functional assessed her as able to simple and complex tasks, intact attention span and memory, able to accept instructions and work with coworker's and the general public. (AR 330.)

**Hearing Testimony**

Claimant testified that she is right hand dominant. (AR 32.) She last worked part time as a bookkeeper, six hours a day, three days a week. (AR 33.) She stopped because she was too fatigued and had trouble concentrating. (AR 33.) Prior to that position, she was an administrative assistant doing computer work at a hospital. (AR 34.) She lifted 50 to 75 pounds such as files. (AR 35.) She was terminated from her job of 30 years because she had used all her medical leave. (AR 35.) She had 2 major surgeries, five months apart. (AR 35.) She feels her condition has not improved such that she can not do full time work because of fatigue and cannot walk. (AR 35-36.) Her stomach cramps due to her hernia. (AR 36.) It cramps more when she is sitting. She has trouble concentrating due to depression related to her physical limitations. (AR 38.) She can concentrate for one hour and thirty minutes at a time and then her mind goes blank. (AR 39.) She said she can half the day on her feet, but that includes breaks. (AR 40.) When she has been on her feet for half the day, the next day she has to rest. (AR 41.)

Vocational Expert ("VE"), Dave Detmer, testified. (AR 49.) He testified that claimant's past relevant work as an administrative assistant is sedentary, as generally performed in the national economy. (AR 49.) Technological advances would not significantly erode the occupational base. The VE was given the hypothetical of ability to lift 20 pounds occasionally, 10 pounds frequently, stand, sit and/or walk six hours in eight. (AR 50.) The VE testified that claimant could perform her past relevant work. (AR 50.) In another hypothetical, the VE was given the claimant's limitations of lifting 10

pounds frequently and occasionally; stand/walk with normal breaks for at least 2 hours. The VE testified that this includes the past relevant work and full range of sedentary work. (AR 50.) In a final hypothetical, based on limitations assessed by Dr. Modi, of inability to lift weight but to do some sedentary work, able to stand/walk for 2-4 hours in an eight hour day and sit for 8-hours, the VE said it was the full range of sedentary work and past relevant work. (AR 51.) The VE acknowledged that the past relevant work as claimant described it, lifting heavy files, made the job in the "light" work range. (AR 52.) The VE testified that some administrative assistant jobs are not sedentary due to having to lift heavier weights. (AR 54.) The VE testified that the duties will vary slightly in different work environments. (AR 57.) In a followup report, the VE identified 76,000 general office supervisors in the state of California of which 34,000 are performed solely at the sedentary level. (AR 136.)

## ALJ Findings

In his December 3, 2004 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 19.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 23):

1. The claimant meets the special insured status requirements of the Social Security Act through December 31, 2004.

2. The claimant has not engaged in substantial gainful activity since March 30, 2001 the alleged onset date of disability.

3. The claimant is 64 years old, has a twelfth grade education, and worked as an administrative assistant.

4. The medical evidence establishes that the claimant has status post hepatiocjejunostomy for idiopathic fibrosis of the bile duct, but does not have an impairment or combination of impairments of that level of severity listed in or medically equal to one listed in the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4.

5. Pursuant to 20 CFR 404.1529-416.929 and the discussion above, the alleged "disabling" severity of the claimant's subjective complaints is not reasonably related to the objective medical and other evidence.

6. The claimant has the residual functional capacity to perform sedentary level work

without further restriction due to mental or other non-exertional limitations. 20 CFR. 1567.

7. The claimant is not precluded by medically determinable impairments from doing past relevant work without further restriction due to mental or other non-exertional limitations. 20 CFR 404.1567.

8. The claimant is not precluded by medically determinable impairments from doing past relevant work as an administrative assistant as it is generally performed in the national economy.

9. The claimant is not under a "disability" as defined in the Social Security Act, as amended, at any time through the date of the decision. 20 CFR §406.1520(e).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence

in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred in numerous ways at all points in the sequential evaluation.

## The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3. If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

4. If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

---

[1] *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2] If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985.

[3] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

6

5. If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In this case, claimant convinced the ALJ that she met the criteria in step one of the sequential analysis; that she has not been engaged in substantial gainful employment.

At step two, the ALJ must determine if the impairment is severe. The ALJ determined that the medical evidence establishes severe impairments of post hepatiocjejunostomy for idiopathic fibrosis of the bile duct. (AR 23, finding no. 4.)

**The ALJ's Finding of Residual Functional Capacity**

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. In this case, the ALJ found that claimant had the residual functional capacity to perform sedentary work. (AR 23, Finding no. 6.) Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

---

[4] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

Claimant argues the ALJ erred in finding she has residual functional capacity for work. Claimant submits a conclusory argument that "[t]he ALJ sets out the RFC conclusions without citing any basis therefore." (Opening Brief p.6.) Claimant does not set out in what way the ALJ erred in this conclusion.

The ALJ summarized all of the evidence in the record and reviewed the records from claimant's surgeries. (AR 20.) The ALJ acknowledged that claimant was hospitalized in March 2001 for abdominal pain. (AR 20, 140-144.) The ALJ acknowledged that claimant was further hospitalized in June 2001 and underwent surgery. (AR 20.) She was discharged after seven days in good condition. (AR 20, 222.) The ALJ reviewed the notes of claimant's surgeon, Dr. Way. In October 2001, Dr. Way noted that claimant was doing quite well, despite minor complaints. (AR 215.) In December 2001, an abdominal scan was unremarkable, and claimant was considered to be stable. (AR 21, 292, 295.) In January 2002, Dr. Way indicated that claimant was doing very well, and that she had no problems other than an incisional hernia (AR 214).

The ALJ considered the opinions of Dr. Modi and Dr. Tsuji. (AR 21.) In August 2002, Dr. Tsuji reported that claimant's cardiac stress test was negative for ischemia or other significant abnormality. (AR 277, 282-294.) Dr. Modi found claimant without abdominal discomfort. (AR 291.) Dr. Modi noted that claimant had symptoms of stress, anxiety and depression with some memory problems, but he expressly opined that she was capable of sedentary work with sitting for eight hours, and standing/walking for two-to-four hours. (AR 273-74.) The ALJ discounted Dr. Modi's mental assessment because it was not consistent with the weight of other medical evidence.

The ALJ relied upon the psychiatric consultative examination by Dr. House. (AR 21-22.) Dr. House opined that claimant was of above average intelligence, that she was only mildly impaired as evidenced by his Global Assessment of Functioning (GAF) score of 65-70, and that she would have no difficulties with work functions. (AR 330-31.) Claimant also reported to Dr. House that she could not "lift anything over 20 pounds," and that she cooked, cleaned the house, washed the dishes, ran errands and took short walks unrestricted." (AR 326, 327.)

The ALJ also relied upon the opinions of the state agency physician who opined that claimant was capable of at least the full range of sedentary work and that she did not have a severe mental impairment. (AR 22, 307-14, 317-24, 332-345.)

The ALJ acknowledged the opinion of disability by Dr. Plotzker. (AR 21-22.) The ALJ stated specific and legitimate reasons for rejecting the treating opinion of Dr. Plotzker's opinion. First, the ALJ gave a detailed summary of the facts and conflicting clinical evidence. (AR 21-23.) The ALJ reviewed all of the objective medical evidence in the record, including the hospital records, treatment records, x-rays, and other reports. (AR 21-23.) He noted the claimant's repeated complaints and treatment history. The ALJ found that Dr. Plotzker did not support his conclusion of disability. The ALJ noted the conflict with the opinion by Dr. Plotzker with that of findings by Dr. Modi. (AR 21.) It is for the Commissioner to resolve conflicting evidence. *Sanchez v. Secretary of HHS*, 812 F.2d 509, 511 (9th Cir. 1987). The ALJ noted that Dr. Plotzker's opinion of disability was rendered within a year of claimant's surgery and thus did not demonstrate that claimant's allegedly disabling condition met the one-year durational requirement set forth in the Social Security Act. 42 U.S.C. § 423(d). The ALJ noted that Dr. Plotzker's opinion appeared to be based preliminary on subjective complaints.

It is clear from these findings that the ALJ analyzed the records and medical opinions. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict). The opinion of a reviewing physician and the ALJ's conducting an independent analysis of the medical evidence may constitute substantial evidence. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Thus, there is substantial evidence in the Record to support the ALJ's decision. The Court does not find error in the ALJ's assessment of residual functional capacity.

### Claimant's Arguments on Other Impairments

Claimant argues that the ALJ erred in failing to find her other impairments severe or that they met the Listing. (Opening Brief p.6:8-10.)

The Social Security regulations define severe impairment as an impairment which significantly limits a claimant's "ability to do basic work activities." 20 C.F.R. §§§§ 404.1521, 416.921; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "Basic work activities" are defined as including such capabilities as walking/sitting/standing/lifting, 20 C.F.R. § 404.1521(b)(1),(2); understanding, carrying out, and remembering simple instructions, 20 C.F.R. § 404.1521(b)(3); use of judgment, 20 C.F.R. § 404.1521(b)(4); responding appropriately to supervision, co-workers and usual work situations, 20

C.F.R. § 404.1521(b)(5); and dealing with changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6). If the impairment does not significantly limit a claimant's physical or mental ability to do basic work activities, the impairment is not severe. *Bustamante v. Massanari*, 262 F.3d at 955

The claimant fails to develop the "severity" arguments and the Court will not speculate on them.

The claimant does not cite to authority for the proposition the ALJ must engage in a particular analysis or issue findings on rejecting a Listing. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[i]t is unnecessary to require the [Commissioner], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments"). Claimant does not argue in what way she meets the Listing.

Claimant argues that the ALJ failed to adequately develop the evidence on her mental impairment.

The existence of a mental impairment, however, must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory or psychological test findings. 20 C.F.R. §§ 404.1526(b) and 416.926(b); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(B). Signs include psychological abnormalities which can be observed apart from symptoms and must be shown by medically acceptable clinical diagnostic techniques. 20 C.F.R. §§ 404.1528(b) and 416.928(b). Psychiatric signs are medically demonstrable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation and contact with reality, and which must also be shown by observable facts that can be medically described and evaluated. 20 C.F.R. §§ 404.1528(b) and 416.928(b). They are typically assessed by a psychiatrist or psychologist and/or documented by psychological tests. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(B).

The ALJ obtained a consultative psychiatric examination by Dr. House. (AR 325-331.) Dr. House conducted a comprehensive psychiatric evaluation. Dr. House did not assess functional limitations which would preclude claimant for all work activity. Dr. House concluded that, despite her adjustment disorder, claimant was not significantly limited in any work-related aspect of her mental functioning. The ALJ reviewed all of the medical and clinical evidence. The ALJ noted that claimant had been diagnosed with an adjustment disorder with mixed emotional features, and anxious and depressed mood, with chronic and enduring circumstances. (AR 21, 330.) The ALJ relied upon the

psychiatric consultative examiner as to her mental impairment. Thus, the ALJ developed the Record on the mental impairment and properly considered the evidence. The ALJ was not required to further develop the mental health record.

## Past Relevant Work

Claimant criticizes the ALJ's finding that claimant can perform her past relevant work. Claimant argues that the ALJ failed to make specific findings about claimant's past relevant work mental and physical demands.

At step four, the ALJ determines whether the impairments preclude claimant from performing her past relevant work. At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62; *Pinto v. Massanari, supra*, 249 F.3d 840, 844.

To be capable of performing her past relevant work, the claimant must be able to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; or
>
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

SSR 82-61; *Pinto v. Massanari*, 249 F.3d at 844. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82- 62 (emphasis added).

The ALJ exhaustively reviewed the relevant medical evidence regarding claimant's exertional and non-exertional limitations. The ALJ relied on the testimony of the VE that claimant could perform the past relevant work as it is performed in the national economy.

> "With a residual functional capacity despite her combined impairments, including subjective complaints, for sedentary level work, the claimant remains capable of meeting the demands of her past vocationally relevant occupation of administrative assistant as it is generally performed in the national economy, based on the testimony of the vocational expert, which is not rebutted by the Dictionary of Occupational Titles or other standard vocational references." (AR 22.)

The ALJ relied on the testimony of the VE that claimant's past relevant work as an administrative assistant as sedentary exertional level. (AR 26.)

The VE testified that claimant's past relevant work as an administrative assistant is sedentary, as generally performed in the national economy. (AR 49.) The VE testified that, given limitations of inability to lift weight but to do some sedentary work, able to stand/walk for 2-4 hours in an eight hour day and sit for 8-hours, claimant could perform the full range of sedentary work and past relevant work. (AR 51.) *See Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir.2001) (VE testimony is not required at step four where claimant retains burden of showing she cannot perform her past relevant work). The ALJ's finding is sufficient.

Claimant argues that her job as she performed it required her to lift more and stand longer than a standard sedentary job. The ALJ, here, determined that the clamant could perform her past relevant work as it is generally performed in the national economy. *See, generally*, *Pinto v. Massanari*, 249 F.3d at 845 ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations.")

The VE testified as to the claimant's past relevant work and as to the DOT description of the job. The *Dictionary of Occupational Titles* ("DOT") is "the Secretary's primary source of reliable job information."[5] *See Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990). Claimant states it was error for the VE not to cite the specific DOT code number. Claimant, however, does not provide authority for this argument. The VE testified, with the concurrence of claimant's counsel, that the applicable position is "administrative assistant." (AR 49.)

Claimant also argues that she could not question the VE because of his "equivocation." The

---

[5] The Occupational Information Network (O*NET), which defines and describes occupations, is an electronic successor to the DOT. The current O*NET database of occupational information is based largely on data supplied by occupational analysts using sources such as the DOT. See the U.S. Dep't of Labor website, http://www.bls.gov/emp/empocc1.htm. O*NET descriptors include: skills, abilities, knowledge, tasks, work activities, work context, experience levels required, job interests, and work values/needs. Basic skills measured by O*Net are active learning and listening, critical thinking, learning strategies, mathematics, monitoring, reading comprehension, science, speaking, and writing. However, the organization of the data in the prototype version of O*NET does not parallel SSA's disability determination process, as does the DOT. See Charles T. Hall, Social Security Disability Practice, Ch. 3, Cross-examining Vocational Experts- the Dictionary of Occupational Titles, § 3:30 (2004).

Court's review of the VE's testimony does not reveal that he was "equivocal." (Opening Brief p.6:23-24.) The VE testified that the position of administrative assistant, as performed by claimant in her particular job, was more light work then sedentary. (AR 52-53.) He testified, however, that the position of administrative assistant, as generally performed, is that of a sedentary position. (AR 53-54.)

Claimant argues that her counsel was precluded from fully examining the VE. (Opening Brief p. 6:14; citing AR 55.) While the ALJ did stop the questioning, he did so because the ALJ acknowledged under the hypothetical posed by counsel, claimant would "grid out," and thus, she would be considered disabled. (AR 55.)

Claimant argues that the ALJ failed to address the prior Exhibit file and reopening the prior decision. Counsel does not cite to any such request.

### Claimant's Testimony

Claimant argues that the ALJ did not give specific, convincing reasons for rejecting the claimant's subjective complaints.

A claimant's credibility generally becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective pain statements may tell of greater limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ must give specific, convincing reasons for rejecting the claimant's

subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148.

An ALJ may consider the following factors to determine the credibility of a claimant's allegations:

    (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    (4)    Treatment, other than medication, for relief of pain;

    (5)    Functional restrictions;

    (6)    Claimant's daily activities;

    (7)    Unexplained, or inadequately explained, failure to seek treatment or follow up a prescribed course of treatment; and

    (8)    Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991); 20 C.F.R. §1529.

After providing a detailed analysis of the objective medical records, the ALJ turned to the consideration of the claimant's subjective complaints. The ALJ found that the subjective complaints and testimony are less than fully supported by the objective medical findings and are not credible. (AR 22.) The ALJ compared claimant's claims of pain to the objective medical evidence, he had previously detailed:

> "As previously described, treatment notes since June 2001, revealing good progress with associated weight gain, improving liver function, and normal cardiorespiratory findings, rebut the claimant's allegations of continuing symptoms including fatigue and dyspnea. As early as March 2002, moreover, Dr. Modi reported that the claimant had no further abdominal discomfort, and in May of that year it was noted that she had stopped taking anti-depressant medications." (AR 22.)

While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d at 857.

Moreover, the ALJ stated claimant's activities of daily living are not significantly restricted. "Despite her assertions as to continuing symptoms including fatigue with resulting limitations, the claimant conceded at the hearing that he activities include housecleaning, cooking and washing dishes."

(AR 22.) *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (An ability to take care of personal needs, prepare easy meals, do light housework, and shop for some groceries is inconsistent with the presence of a condition which would preclude all work activity.) If a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Claimant argues that her housekeeping duties "are not confirmed by the evidence." (Opening brief p.4:10-11.) To the contrary, claimant testified she does these housekeeping duties, albeit with breaks. Further, the ALJ found that the objective evidence did not support the level of fatigue claimed by claimant.

In addition, the ALJ discussed other credibility factors. He discussed the nature, location, onset, and duration of claimant's complaints. (AR 20-22.) The ALJ reviewed the history of gastrointestinal complaints, abdominal complaints, complaints of fatigue, anxiety, stress and depression, and that claimant's complaints worsened after surgery. 20 C.F.R. § 404.1529(c)(3)(ii). The ALJ discussed precipitation factors of claimant's complaints, noting increased complaints following surgery. (AR 20-21); 20 C.F.R. § 404.1529(c)(3)(iii). The ALJ discussed Claimant's medications and treatment other than medications such as surgery. (AR 20-22). 20 C.F.R. § 404.1529(c)(3)(iv)-(v).

Contrary to claimant's claims, the ALJ comprehensively and correctly evaluated claimant's pain complaints and determined claimant had the residual functional capacity to perform the exertional demands of sedentary work. The ALJ supported his findings with reference to the objective medical evidence. "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Thus, there is substantial evidence in the record to support the ALJ's rejection of claimant's subjective complaints.

Claimant also argues that the ALJ did not mention the documentary representations.

The Ninth Circuit has long held that ALJ does not need to discuss all evidence presented to him. *Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir.1984). An ALJ need explain why significant and probative evidence has been rejected. *Id.* An example of significant and probative evidence is uncontroverted medical evidence. *Id.* at 1395. The *Vincent* court found controverted medical evidence

and lay testimony to be neither significant nor probative. *Id.*

Here, the ALJ considered claimant's medical records, reviewing and consulting records, and her testimony. The record supports a partial discrediting of claimant's testimony. "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d at 604. Thus, there is substantial evidence in the record to support the ALJ's partial rejection of claimant's subjective complaints.

## CONCLUSION

The Court RECOMMENDS as follows:

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court recommends the DENIAL of the claimant's appeal from the administrative decision of the Commissioner of Social Security. It is recommended that the clerk of this Court be DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Myra Bettencourt.

These findings and recommendations are submitted to the United States District Judge Anthony W. Ishii to whom this matter is assigned pursuant to 28 U.S.C. § 636(b)(l) and this Court's Local Rule 72-304. Within 10 days of the date of service of these findings and recommendations, plaintiff may file written objections with the Court and serve a copy on all parties and the Magistrate Judge in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     December 16, 2005                   /s/ Lawrence J. O'Neill**
b9ed48                                           UNITED STATES MAGISTRATE JUDGE